1
2
3
4

## UNITED STATES DISTRICT COURT

5

## FOR THE EASTERN DISTRICT OF CALIFORNIA

6
7

| | |
|---|---|
| AMANDA DIORIO, | 1:11-CV-01569-LJO-JLT |
| Plaintiff, | **ORDER ON MOTION FOR SUMMARY JUDGMENT** (Doc. 15) |
| v. | |
| COUNTY OF KERN, RON RICE, ROBERT BOARDMAN, and DOES 1-100, | |
| Defendants. | |

8
9
10
11
12
13
14
15

### PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

16      Judges in the Eastern District of California carry the heaviest caseload in the nation, and this

17  Court is unable to devote inordinate time and resources to individual cases and matters.  This Court

18  cannot address all arguments, evidence and matters raised by parties and addresses only the arguments,

19  evidence and matters necessary to reach the decision in this order given the shortage of district judges

20  and staff.  The parties and counsel are encouraged to contact the offices of United States Senators

21  Feinstein and Boxer to address this Court's inability to accommodate the parties and this action.  The

22  parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that

23  the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S.

24  District Judge Lawrence  J. O'Neill who must prioritize criminal and older civil cases.

25                          **INTRODUCTION**

26      Plaintiff Amanda Diorio ("Diorio") filed suit against the County of Kern ("the County"), Ron

27  Rice ("Rice"), Robert Boardman ("Boardman") and Does 1 through 100 (collectively "Defendants")

28  for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

1  §2000(e), and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940.

2  Diorio also alleges causes of action for retaliation in violation of Title VII and FEHA against the

3  County.  Diorio further brings claims for violation of Fourteenth Amendment equal protection against

4  Boardman and Rice and for violation of the First Amendment right to free speech against Boardman

5  under 42 U.S.C. § 1983.  Defendants filed a motion for summary adjudication of all causes of action in

6  the complaint.  Diorio filed an opposition and Defendants filed a reply.  For the reasons discussed

7  below, this Court GRANTS in part and DENIES in part Defendants' motion for summary adjudication.

8                                                    **BACKGROUND**

9     **A.    Facts**

10          Diorio worked for the County as a trainee and Park Ranger from 2006 until her resignation in

11  October 2009.  She was the only female Park Ranger for the County during the course of her

12  employment.  She alleges that, on account of her gender, female, she was subject to disparate and

13  adverse treatment and was ultimately forced to resign.  She also alleges that Defendants retaliated

14  against her for her complaint against Sergeant Norman Eades ("Eades") that led to an investigation by

15  Internal Affairs.  Diorio further alleges that her protected speech on a matter of public interest was a

16  motivating factor in the decision to force her to resign.

17          Diorio worked as a Park Ranger trainee from April 2006 through December 2006.  Upon

18  completion of the field training program, Boardman, the Park Ranger Manager, assigned Diorio to

19  work at Buena Vista Lake under the supervision of Eades.  Eades and Boardman are friends and may

20  refer to themselves as "good ole boys."  Eades allegedly made derogatory statements about

21  homosexuals and African Americans and misogynistic comments about women.  Specifically, Diorio

22  alleges that, at their initial meeting, Eades told her that women did not belong in law enforcement and

23  later shared stories with Diorio about committing acts of violence against his former wife.  Diorio

24  made multiple verbal complaints about Eades to Boardman and also wrote to Boardman to request a

25  conference to discuss her complaints.  Boardman did not grant the request.

26          In June 2007, Diorio and Eades engaged in a verbal confrontation that resulted in Diorio

27  making a complaint to the Director of the Department of Parks and Recreation, Bob Lerude

28  ("Lerude"), that Eades' conduct was creating a hostile work environment for her on account of her

gender.  The Kern County Sheriff's Department performed an Internal Affairs investigation.  The investigation concluded in November 2007, and Diorio's claim of hostile work environment was not substantiated.  The investigated resulted in Diorio and Eades each receiving a written reprimand.  Eades was also given two unpaid days off.  When Diorio contested her reprimand, Lerude rescinded it and instead issued to her a letter of counseling.

Sometime after the investigation, Diorio was transferred to the supervision of Sergeant T.J. Williams.  Diorio alleges that she was given an overwhelming amount of paperwork, which had not happened previously, upon her transfer.  Diorio also experienced workplace problems with Williams.  Specifically, Diorio alleges that Williams threatened her after she caught him fishing at an inappropriate location or time at Buena Vista Lake.

Around this time, the Kern County Sheriff's Department and the Kern County Park Rangers were considering a merger.  In July 2008, Diorio prepared a memorandum advocating in favor of the merger.  Boardman allegedly disagreed and expressed displeasure with Diorio's position.  The Park Rangers voted against the merger in July 2008.  Diorio alleges that Boardman was motivated by her expression of her position on the merger in influencing or making the decision to terminate her.

Around September 2008, Diorio was transferred to Hart Park under the supervision of Sergeant Rice.  In January 2009, Diorio received a letter of Ranger Commendation.  In February 2009, Rice reviewed Diorio's job performance in her employee performance review ("EPR") as satisfactory in most categories and above standard or outstanding in others.

In July 2009, Rice met with Diorio and drafted a memorandum regarding her declining job performance, particularly in traffic stops in arrests, over the past months.  Diorio explained that her attention at that time was on her family as her husband was being tested for cancer but denied any decline in her work performance.  Diorio alleges that, during this meeting, Rice stated Diorio should be a secretary.

In or around July 2009, Park Ranger Michael Marler was training newly hired Officer James Mawson.  During Mawson's training, Diorio engaged in a conversation with Mawson in Marler's presence regarding Williams and possibly Eades.  In August 2009, about one month after the conversation, Diorio, Marler, and Mawson each prepared a memorandum regarding the conversation

3

("Mawson Incident").  Marler and Mawson recalled Diorio using foul language to describe Williams and possibly Eades.  In her memorandum, Diorio indicated that she did not recall the conversation. Diorio denies using foul language and alleges that she stated Williams was a "micromanager."  .

In August 2009, Diorio was given a one-day assignment in Buena Vista Park under Williams, away from her duty station at Hart Park under Rice.  Diorio objected to this assignment. While at Buena Vista Park, Diorio allegedly had little to do and discerned through radio activity that Hart Park was busy.  Diorio requested to return to Hart Park.  Rice did not grant her request.  Diorio contacted Williams to notify him that Hart Park was busy and could use her assistance.  Williams then contacted Rice regarding Diorio returning to Hart Park and went to Hart Park himself.  Diorio then contacted Rice and expressed dissatisfaction that Williams had gone to Hart Park while she was assigned to Buena Vista Park for the day.  Diorio prepared a memo and was given a written reprimand for this incident ("Buena Vista Incident").

Diorio received a written Notice of Proposed Discipline ("the Notice") dated September 4, 2009 that proposed to terminate her from her position as Park Ranger.  The Notice indicated that the Mawson Incident, the Buena Vista Incident, and the job performance issues noted in her January 2008 letter of counseling and in the July 2009 meeting with Rice were the reasons for Diorio's proposed termination.  Diorio was allowed to resign in lieu of being terminated.  Diorio resigned on October 7, 2009.  A male named Longcrier was hired to replace Diorio.

Diorio filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 29, 2010 alleging sex discrimination and retaliation and received a Notice of Right-To-Sue dated July 30, 2010.

**B.    Procedural History**

Diorio filed suit in this Court on September 14, 2011.  She alleges seven causes of action under Title VII, FEHA, and the First and Fourteenth Amendments.  Defendants filed an answer on October 19, 2011 and the instant motion for summary judgment on January 18, 2013.  Diorio filed an opposition, which the Court struck for non-compliance with the Court's Standing Order, on February 12, 2013.  Diorio filed a renewed opposition on February 14, 2013, and Defendants filed a reply on February 26, 2013.

# DISCUSSION

## Motion for Summary Judgment

### A.    Standard under Fed. R. Civ. P. 56

Defendants seek summary adjudication of each of Diorio's causes of action in her complaint.

Fed .R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir.1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn*., 809 F.2d 626, 630 (9th Cir.1987).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec*., 475 U.S. at 586, n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538; *International Union of Bricklayers v. Martin Jaska, Inc*., 752 F.2d 1401, 1405 (9th Cir.1985).

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita*, 475 U.S. at 587.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir.2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990).  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see*

*High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103; *see Adickes*, 398 U.S. at 160. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

"In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir.1981); *see also Robi v. Five Platters*, Inc., 918 F.2d 1439 (9th Cir.1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir.1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal.1977).

**B.     Application to Diorio's Claims**

Diorio alleges that, on account of her gender, female, she was subject to discrimination and was forced to resign in violation of Title VII and FEHA.  Diorio also brings claims for violations of the Fourteenth Amendment's equal protection clause under 42 U.S.C. § 1983 against Rice and Boardman. She further alleges that Defendants retaliated against her for her complaint against Eades in violation of Title VII and FEHA.  Finally, Diorio brings a claim for violation of the First Amendment's free speech protection under 42 U.S.C. § 1983 against Boardman for forcing her to resign based on her protected speech on a matter of public interest.[1]

1.     **Discrimination**

i.     **Title VII**

Under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C.A. § 2000e-2(a)(1).  "The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens."  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 429 (1971)).  "In the implementation of [employment and personnel] decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise." *Id*.

Discrimination can be established by direct or circumstantial evidence.  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir.1998); *DeJung v. Superior Court*, 169 Cal.App.4th 533, 549–50 (2008).   "Direct  evidence  is  evidence  which,  if  believed,  proves  the  fact  [of

---

[1] The parties also dispute the timeliness of Diorio's EEOC charge.  This Court has found previously that, because the EEOC and California's Department of Fair Employment and Housing ("DFEH") engage in a workshare agreement, the 300-day rather than 180-day filing period applies regardless of whether the plaintiff initially filed with the DFEH or the EEOC.  *Flores v. Merced Irr. Dist.*, 758 F. Supp. 2d 986, 992-93 (E.D. Cal. 2010).  Diorio received the notice of proposed disciplinary action, which proposed to terminate her, on September 4, 2009.  The best indication in the record of when Diorio received notice of her termination being final rather than proposed is October 4, 2009, when Diorio was informed following her and her union's meeting with Lerude that she would be allowed to resign in lieu of being terminated, although she did not actually resign until October 7, 2009.  Diorio filed the EEOC charge on July 29, 2010, which was 297 days after the date she received notice of the final decision.  Therefore, her EEOC charge was timely.

discriminatory animus] without inference or presumption." *Godwin*, 150 F.3d at 1221.  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id*.  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co. LLC*., 413 F.3d 1090, 1095 (9th Cir. 2005) (citing *Godwin*, 150 F.3d at 1221).  The Ninth Circuit has held that "a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." *Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir.2005).  However, the Ninth Circuit also has cautioned that summary judgment is not unavailable in all cases where the plaintiff has alleged direct evidence of discriminatory intent. *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991).  "In analyzing a motion for summary judgment, the district court reviews the evidence to determine not merely whether there is a factual dispute between the parties, but whether there is a *genuine* factual dispute." *Id*. (emphasis in the original).  "A factual dispute is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. at 473 (quoting *Anderson*, 477 U.S. at 248).  If the plaintiff has no direct evidence, she may prove discrimination by using circumstantial evidence through the framework articulated in *McDonnell Douglass*.

According to Diorio's complaint and declaration, she first met and spoke with Eades while on rotation at Lake Isabella during her second week of field training.  At this initial meeting, which occurred over lunch with other officers present, Eades allegedly stated to Diorio that women do not belong in law enforcement and that "we're going to have fun when you come work for me[.]"  Diorio was assigned to Eades' supervision when she completed field training.

In addition, according to Diorio's declaration, she sometimes passed along concerns from female security guards at Buena Vista Lake to Boardman.  In response, Boardman allegedly stated to Diorio, "[S]ee, you girls are trouble, you are always starting trouble," and "[Y]ou girls are all the same."  Boardman, as the Park Ranger Manager, was also in a position of supervision over Diorio.

Eades was Diorio's direct supervisor and Boardman was a higher supervisor who was responsible, at least in part, for the decision to terminate Diorio.  The alleged statements directed at

Diorio by her supervisors show gender animus and/or discrimination on their face and are probative of whether gender was a motivating factor in her termination.  However, in his declaration, Boardman denies making any decisions or basing any actions with regard to Diorio's termination on her gender.[2] The letter of proposed discipline states that Diorio is being terminated for dishonesty, insubordination, and conduct unbecoming an employee in public service as a result of the Mawson Incident, the Buena Vista Incident, and the job performance issues noted in her January 2008 letter of counseling and in the July 2009 meeting with Rice.  This creates a triable issue as to whether Diorio's gender was in fact a motivating factor in her forced resignation.  *See*, *Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").  Because Defendants' submissions "ha[ve] not foreclosed the possibility of the existence of certain facts from which it would be open to a jury to infer from the circumstances" that gender was a motivating factor in Diorio's termination, this genuine issue of material fact defeats summary judgment.  *Id.*  (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).  *See*, *Dominguez-Curry*, 424 F.3d at 1041 ("Indeed, the language of Title VII and well-settled case law establish that an employer will be held to have committed an unlawful employment practice when the plaintiff demonstrates that sex was a motivating factor for any employment practice, even though other factors also motivated the practice.") (citation and ellipses omitted).  Moreover, the *McDonnell Douglass* framework is inapplicable here because Diorio presented direct evidence of discriminatory animus.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

Therefore, Defendants' motion for summary judgment is DENIED as to Diorio's third cause of action for gender discrimination in violation of Title VII.

### ii.      **FEHA**

In determining propriety of summary judgment on a discrimination claim under FEHA, California courts have looked to the federal test for evaluating claims under Title VII.  *Sada v. Robert F. Kennedy Med. Ctr.*, 56 Cal. App. 4th 138, 148 (1997).  *See*, *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) ("While Brooks argues that she was subjected to sexual discrimination under

---

[2] Eades was not deposed and did not give a declaration with regard to this action.

Title VII as well as FEHA, we need only assess her claim under federal law because Title VII and FEHA operate under the same guiding principles.").  While Title VII claims are generally evaluated using the *McDonnell Douglas* analysis, it does not apply where, as here, the plaintiff presents direct evidence of gender animus and/or discrimination.  *Thurston*, 469 U.S. at 121.  As discussed above, the facially discriminatory alleged statements by Boardman and Eades, as Diorio's supervisors, create a triable issue of fact as to the actual motivation of her supervisors and employer in the decision to terminate her.  *Godwin*, 150 F.3d at 1221.  *See also*, *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991) ("[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact" if she produces "specific facts [] directly evidencing a discriminatory motive[.]").

Therefore, under the same reasoning as in the Title VII analysis above, Defendants' motion for summary judgment is DENIED as to Diorio's fourth cause of action for gender discrimination in violation of FEHA.

iii.     **42 U.S.C. § 1983**

"The plaintiff in a § 1983 claim alleging a violation of equal protection must prove that the defendant acted in a discriminatory manner and that the discrimination was intentional."  *Henderson*, 940 F.2d at 471 (citing *Stones v. Los Angeles Comm. College Dist*., 796 F.2d 270, 275 (9th Cir.1986)); *Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir.1985), as amended, 784 F.2d 1407 (1986)). Discriminatory intent may be proven by direct or indirect evidence.  *Id.*  (citing *Arlington Heights v. Metropolitan Housing Dev. Corp*., 429 U.S. 252, 266 (1977); *Lowe*, 775 F.2d at 1010).  "Beyond this requirement of showing intentional discrimination, however, there is no specific test that an equal protection plaintiff is required to meet, and in order to survive a motion for summary judgment by the defendant, a plaintiff must only produce evidence sufficient to establish a genuine issue of fact as to the defendant's motivations."  *Id.*

Ninth Circuit cases make clear that "the status of the § 1983 equal protection claim generally depends on the outcome of the Title VII analysis."  *Id.* at note 14 (collecting cases).

1.  **Boardman**

Boardman is the Park Ranger Manager, in a position of supervision over Diorio, and at least

in part responsible for the decision to terminate Diorio.   As discussed above, Boardman's alleged statements to Diorio in the context of Diorio passing along concerns from female security guards that "[S]ee, you girls are trouble, you are always starting trouble," and "[Y]ou girls are all the same" are direct evidence of gender and/or discriminatory animus.  *See*, *Coghlan*, 413 F.3d at 1095.  Taking into consideration Boardman's denial of being motivated by Diorio's gender in terminating her, accepting Diorio's allegations as true, and drawing all reasonable inferences in favor of Diorio create a genuine issue of material fact as to discriminatory intent, at least on Boardman's part, in the decision to terminate Diorio.  *Anderson*, 477 U.S. at 255, *Matsushita*, 475 U.S. at 587.  This is also in line with the Title VII analysis.  *Henderson*, 940 F.2d at note 14.

Therefore, Defendants' motion for summary judgment is DENIED as to Diorio's first cause of action under 42 U.S.C. § 1983 for violation of Fourteenth Amendment equal protection against Boardman.

## 2.  **Rice**

Rice was Diorio's direct supervisor at the time she was terminated and participated in the process of deciding to terminate Diorio.  The only purported direct evidence of discrimination by Rice is his alleged statement, which Rice denies making, during the July 2009 work performance meeting with Diorio that she should be a secretary.  However, this is not direct evidence of discriminatory animus or motive because the statement is not facially related to Diorio's gender.  *Godwin*, 150 F.3d at 1221 ("Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.").  The alleged statement requires the inference or presumption that Rice stated Diorio should be a secretary *because* she is female to prove the fact of discriminatory animus.

As with Title VII claims, a § 1983 equal protection plaintiff may prove discrimination by using circumstantial evidence through the *McDonnell Douglass* three-stage burden-shifting framework.  *Id*. at note 14.  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by showing that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more

1  favorably." *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1140 (9th Cir.

2  2001) (quoting *Godwin*, 150 F.3d at 1220).  If a plaintiff satisfies her burden of establishing a prima

3  facie case of discrimination, the burden shifts to the defendant to produce nondiscriminatory reasons

4  for the allegedly discriminatory conduct.    *Id*.    The employer's articulation of a facially

5  nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was

6  a pretext for discrimination.  *Id*.

7          The parties do not dispute that Diorio belongs to a protected class or that she was forced to

8  resign.  However, Diorio fails to show that she was performing according to legitimate expectations.

9  The record shows multiple instances of shortcomings in Diorio's work performance that her

10  supervisors had brought to her attention, most notably in Lerude's letter of counseling to Diorio in

11  January 2008, Rice's memorandum on Diorio's declining work performance in July 2009, and the

12  Notice in September 2009.  Memoranda between Diorio and Williams also show a number of

13  corrections in performing her duties.

14          In addition, Diorio cannot show that other similarly situated employees were treated more

15  favorably.  In support of this contention, Diorio, alleges that male employees who "badmouthed" other

16  employees were not terminated while she was.    However, the Notice, Lerude's declaration,

17  Boardman's declaration, and Rice's declaration indicate that Diorio was terminated not only for

18  derogatory comments about another Ranger but also for dishonesty and a pattern of disruptive

19  insubordination.  Dishonesty appeared to be a particular concern because it compromises a Park

20  Ranger's credibility and therefore his/her usefulness to the Parks Department.  Diorio makes no

21  allegations that any male Park Ranger accused of dishonesty or repeated insubordination by his

22  supervisors was not terminated.  In fact, Boardman testified in his deposition that a male employee was

23  on administrative leave and was being terminated for dishonesty and discourteous treatment.

24          Because Diorio fails to establish a prima facie case of discrimination to show a genuine issue

25  of material fact in her 42 U.S.C. § 1983 equal protection claim against Rice, Defendants' motion for

26  summary judgment is GRANTED as to Diorio's second cause of action.

27          2.        **Retaliation**

28          Courts in California also apply the system of shifting burdens outlined above in analyzing

12

1  retaliation cases under both Title VII and FEHA.  *Bergene*, 272 F.3d at 1140-41, *Strother v. S.*
2  *California Permanente Med. Group*, 79 F.3d 859, 868 (9th Cir. 1996), *Flait v. N. Am. Watch Corp.*, 3
3  Cal. App. 4th 467, 475-76 (1992).

4       In order to make out a prima facie case of retaliation, a plaintiff must show that (1) she was
5  engaging in protected activity, (2) the employer subjected her to an adverse employment decision, and
6  (3) there was a causal link between the protected activity and the employer's action.  *Id*.  Defendants do
7  not contest that Diorio engaged in protected activity in her complaint against Eades or that she was
8  subject to an adverse employment decision.  Defendants argue that Diorio fails to make out a prima
9  facie case for retaliation because she does not show a causal link between the Eades complaint and her
10  termination.  Diorio argues that the causal link is established by Boardman's inaction in response to
11  Diorio's prior verbal complaints about Eades, Boardman being upset about the Internal Affairs
12  investigation, Boardman's alleged threat to place her back under Eades' supervision, and the Notice
13  stating that Diorio was proposed to be terminated in part due to her "problems with insubordination"
14  with each of her three supervisors.

15       To establish that there was a causal link between protected activity and an adverse
16  employment decision, an employee must show "'by a preponderance of the evidence that engaging in
17  the protected activity was one of the reasons for h[er] firing and that but for such activity [s]he would
18  not have been fired.'"  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065-66 (9th Cir. 2002)
19  (quoting *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir.1986)).  Diorio has
20  no direct evidence of retaliatory motive.  Each of her alleged facts requires additional inferences or
21  presumptions to be directly probative of retaliatory motive.  Diorio's circumstantial evidence fails to
22  show sufficiently a causal link.  Diorio made her complaints against Eades no later than June 2007,
23  when she made her final complaint to Lerude, which resulted in the Internal Affairs investigation.
24  Diorio was terminated over two years later.  The statement Diorio points to in the Notice stating that
25  she was proposed to be terminated in part due to her insubordination issues with each of her three
26  supervisors actually detracts from her effort to show that her Eades complaint was a but-for cause of
27  her termination.  Rather, the statement shows that Diorio was proposed to be terminated also due to her
28  insubordination problems with two other supervisors.  Boardman being upset by the Internal Affairs

1   investigation and, at some later date, allegedly threatening to reassign Diorio to Eades' supervision do

2   not by themselves give rise to a reasonable inference that Diorio's complaint against Eades was a but-

3   for reason for her termination.  As such, Diorio fails to show the causal link required to make out a

4   prima facie case for retaliatory discharge under Title VII or FEHA.

5            Therefore, Defendants' motion for summary judgment is GRANTED as to Diorio's fifth and

6   sixth causes of action for retaliation in violation of Title VII and FEHA.

7            3.      **First Amendment**

8            "In order to state a claim against a government employer for violation of the First

9   Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the

10  employer took adverse employment action; and (3) that his or her speech was a substantial or

11  motivating factor for the adverse employment action."  *Coszalter v. City of Salem*, 320 F.3d 968, 973

12  (9th Cir. 2003) (quoting *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).  Defendants

13  again do not contest that adverse employment action was taken, but argue that Diorio fails to show that

14  she engaged in protected speech or that her speech was a substantial or motivating factor for the

15  adverse employment action.  Diorio contends that the contemplated merger between the Kern County

16  Sheriff's Department and the Kern County Park Rangers was a matter of public concern such that her

17  July 2008 memorandum advocating in favor of it was protected speech.  Diorio further argues that

18  Boardman's expression of his opposing viewpoint, Boardman's alleged anger with Diorio for her

19  position, and one alleged incident where Diorio was reprimanded for consulting a friend at the

20  Sheriff's Department regarding a disagreement over ticketing with Eades show that Diorio's speech on

21  the merger was a motivating factor in her termination.

22           Where the plaintiff has no direct evidence of retaliatory motive, he or she may make the

23  showing through circumstantial evidence (1) of the "proximity in time between the protected action

24  and the allegedly retaliatory employment decision," (2) "that his employer expressed opposition to his

25  speech, either to him or to others," and/or (3) "that his employer's proffered explanations for the

26  adverse employment action were false and pretextual."  *Keyser v. Sacramento City Unified Sch. Dist*.,

27  265 F.3d 741, 752 (9th Cir. 2001) (citations omitted).  "Such evidence of pretense must be specific and

28  substantial in order to create a triable issue with respect to whether the employer intended to

1   discriminate on the basis of sex." *Godwin*, 150 F.3d at 1222.

2          Diorio prepared her memorandum advocating in favor of the merger in July 2008, the same

3   month during which the merger was voted down, and was terminated more than one year later.  Also,

4   accepting as true Diorio's allegations that Boardman vehemently opposed her position on the merger,

5   her allegations show his disagreement with her opinion on the matter, not with her speech or the

6   expression of her opinion.  Finally, Diorio contends that she actually did nothing wrong and that each

7   of her documented workplace problems and performance issues throughout the years was really just

8   pretext for terminating her for her speech on the merger.  None of this constitutes "specific and

9   substantial" evidence required for Diorio to make out a prima facie case for First Amendment

10  violation.  *Id*.  Nor is it "sufficiently probative that it would allow a reasonable factfinder to conclude

11  either that the alleged reason for [her] discharge was false" or that the true reason for her discharge was

12  her speech regarding the merger  *Id*.  In other words, it does not create a genuine issue of material fact

13  as to whether Diorio's expression of her position regarding the proposed merger was a substantial

14  motivating factor in her termination.

15          Therefore, Defendants' motion for summary judgment is GRANTED as to Diorio's seventh

16  cause of action under 42 U.S.C. 1983 for violation of First Amendment free speech protection.

17                              **CONCLUSION AND ORDER**

18          For the reasons discussed above, the Court

19      1.   GRANTS Defendants the County of Kern, Ron Rice, and Robert Boardman's motion for

20           summary judgment as to Plaintiff Amanda Diorio's second, fifth, sixth, and seventh causes of

21           action;

22      2.   DENIES Defendants the County of Kern, Ron Rice, and Robert Boardman's motion for

23           summary judgment as to Plaintiff Amanda Diorio's first, third, and fourth causes of action; and

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

                                        15

1    3.    ORDERS the Clerk of the Court to enter judgment in favor of Defendant Ron Rice against

2        Plaintiff Amanda Diorio.

3

4

5

6  IT IS SO ORDERED.

7    Dated:    **March 15, 2013**                    **/s/ Lawrence J. O'Neill**

8                                      UNITED STATES DISTRICT JUDGE

16